We'll take it under advisement. Thank you both, Mr. Turing and Ms. Friedman. Thank you, Your Honor. Can we please report that this concludes my business? May I be excused? Yes, please. Thank you. Next case is number 087068, Edgar L. Knight, against the Secretary of Veterans Affairs, Mr. Fox. Good morning, Your Honor. I am William Fox, counsel for the appellant. With me at the counsel table is Mr. Robert Legg, who is counsel below in this action. Edgar Knight served on active duty in the United States Army from 1952 to 1957. He got off of active duty, and what we are presenting to the court today is a claim of clear and unmistakable error based on the misinterpretation of a crucial set of regulations by both the Board of Veterans' Appeals and the Court of Appeals for Veterans' Claims. You're not challenging the fact findings that were made by the Board in 1976? No, Judge Plager, we are not, and we recognize that we may not do so before this court. But there is one fact, Your Honor, that I think is central to an understanding of this case, and it's the fact that I don't see a lot of dissent or consternation. While on active duty, unquestionably, Mr. Knight fainted more than once. He had fainting spells. Those fainting spells were recognized in both his active duty records. He actually saw an Army physician more than once. There were at least a couple of those incidents. And the Army physician seemed not to know exactly what to make of those fainting spells. Subsequent to his release from active duty, and as he was filing the claim for disability benefits at the Veterans Administration, a treating physician diagnosed those fainting spells as essentially symptoms of diabetes. Which they well could have been. The treating physician, Judge Plager, said they were unquestionably diabetic comas. How did that help you? It helps us, Your Honor, because the board and the court misinterpreted this crucial set of regulations beginning at 38 CFR 3303 and running through 3309. The important subset within this set of regulations is 3303 as amplified by 3307. The situation is this. If you are diagnosed with a specific ailment on active duty and later file a claim, you can get service connection afterwards. That is, you have the diagnosis on active duty, later service connection. Because of this particular group of ailments, and I just this morning took another look at 3309, which gives you the laundry list of these ailments that get this presumptive treatment. They are ailments that take a long time to emerge. They are difficult to diagnose in the inception. And the regulations and the statutes, because these regulations simply derive directly from the statutory language, the regulations make absolutely clear that a later diagnosis, specific finding of the ailment, is okay if you have, under the express terms of the regulation, symptoms within the presumptive period, which follows active duty. What we are arguing, and this is an issue, to the best of my knowledge, this court has not addressed. When you say the presumptive period, Mr. Fox, that one-year period. That's the one-year period, yes, Your Honor. And then, parenthetically, Mr. Knight was diagnosed specifically just a little bit outside of the presumptive period. And we do not have symptoms within the presumptive period, but we do have symptoms on active duty. And the clear and unmistakable error. But you don't have symptoms on active duty that are related to diabetes. Yes, Your Honor, we do. You don't because the board found to the contrary, and that fact-finding is not challengeable. We're not challenging the fact-finding here, Your Honor. I believe, and I said in the brief, that if the board were assisted by the interpretation of the regulations that we advance today, that is, that you can have symptoms on active duty, nothing in the presumptive period, and then a later finding of service connection, they would have taken a much closer look at those fainting spells. If you look closely, Your Honor, at the board's decision, they were essentially dismissive of those fainting spells. It didn't really mean a lot. But a treating physician qualified to deal with diabetes mellitus looked at the very same thing and said these are diabetic comas. Well, we have, just to make sure, we have during in-service, we have symptoms but no diagnosis. Yes, Your Honor. Then we have the presumptive period when there's nothing. We have nothing. And then just after the presumptive period, just outside it, as you say, we have a diagnosis. Okay. And the board made a fact-finding and then the court affirmed. Where, in what, could you explain precisely what provision of the regulation or the regulations you say the board and the court misinterpreted? Your Honor. Which, because we, as you said, I think you're right, it's 3.303 and 3.307. But if you could go to the specific provision and say this is the one that was misinterpreted. Your Honor, I will start with the express language of 3.303, which is, I think, where we have to start. 3.303, sub A, talks about service connection. That is the basic definition of service connection. And, again, it's an amplification of what you find in the statutory language as well. It talks about, quote, inception or aggravation during active service or through presumptions. That's my starting point, Judge Schall. Okay. Then we look, it's probably most helpful, Your Honor, to then go back to 3.303A, affirmably showing inception or aggravation during service or through application of statutory presumption. Okay. That's your starting point for your interpretation argument. Then, going where I was going just a few minutes ago, I actually think it's helpful to look at 3.309 for those types of ailments that are set out in the laundry list in 3.309. Diabetes. Diabetes mellitus, specifically. Diabetes for the remainder of my argument. Diabetes is one of those. And if you'll look carefully at that laundry list, what we see are some very special types of diseases and ailments which take a very long time to mature. Multiple sclerosis, for example, is one of them. Leukemia is another. I don't have the rest of the list memorized, but they're all set out in 3.309. And it's a clear recognition, both by Congress and by the VA, that these things don't necessarily show up instantly. It's not like a broken heart. I mean, the idea is you could have something that was contracted in service or somehow aggregated, but yet there wouldn't be a real manifestation for some time. But going on, though, still, how do we get to the regulatory misinterpretation? There, Your Honor, we have to go to 3.307. Okay. And in 3.307, the specific word that we hang our hat on, our specific language, and I'll just quote it to you, it's 3.307 sub C, sub Charlie. And in my brief at page 11, I've provided the full text of that particular part of the reg, and I've also supplied some emphasis there. 3.3307 C. C as in Charlie. And the reg says this will not be interpreted as requiring that the disease be diagnosed in the presumptive period, but only that there then be shown by acceptable medical or lay evidence characteristic manifestations of the disease to the required degree. But we shouldn't stop there. The very next word is symptomatology. Symptomatology. Symptomatology shown in the prescribed period may have no particular significance when first observed, but in the light of subsequent developments, it may gain considerable significance. What we are saying is that the proper interpretation of this set of regulations is symptoms can be shown during the presumptive period, or symptoms can be shown while on active duty. It's absolutely clear that if we had a diagnosis of diabetes while on active duty, we wouldn't be here. It's also clear under the regs if we had symptoms during the presumptive period, and the subsequent final diagnosis of diabetes for service connection, we wouldn't be here. What we are saying in this particular case, Your Honor, is that we have symptoms on active duty. Symptoms on active duty. Nothing in the presumptive period, and then the final diagnosis. Which final diagnosis said this person, Mr. Knight, showed signs of diabetes as early as 1952? We're not, again, we're not challenging the facts here, but the facts are crucial to an understanding of the interpretive problem that I think we have. I don't understand what you're saying. Symptoms, in other words, someone wants to establish service connection for a disability, and symptoms, you're saying, can be shown during the presumptive period, or during active duty. I don't think the government would disagree with that. I mean, somebody can show, if someone can presumably show service connection by pointing to evidence of symptoms during active duty, after, and so forth. Are you saying that there was an error here in not giving your client the benefit of some presumption? Judge Schall, the clear import of both the board decision and the CABC decision is that what we needed was a diagnosis of diabetes on active duty, since there was nothing shown during the presumptive period. But I don't think the board or the court would say, for someone to be able to be entitled to service connection, there has to be a diagnosis during active duty. Certainly, obviously, your case is enhanced if you have that in your pocket, but I don't think anyone would suggest that the board or the court was saying someone can never succeed if they don't have a diagnosis during active duty. I mean, in this case... Judge Schall, what the board and the court are saying, and what the secretary is advancing here in the secretary's brief, is that we didn't have a diagnosis on active duty. Right. And so we had nothing. Are they saying you didn't have symptoms? Yes, Your Honor. This is not a symptom of diabetes? Those fainting spells. Identified by the treating physician just a few years later as diabetic comas. Yeah, but it's not the treating physician who grants the benefit of the veteran's program. It's the board. The board has to make a fact-finding, doesn't it? Yes, yes, Your Honor. And the problem I'm having is the one that Judge Schall is zeroing in on, is I'm willing to read the rule just the way you want me to read it. But the problem I come back to is, okay, let's read it your way. Let's give him the opportunity to go before the board with his fainting spells, tie him into some much later diagnosed diabetes diagnosis, but you're still confronting the problem of a jurisprudential body called the board that has to make a fact-finding. Does all this add up to a compensable service-connected disease? And the board did that. Now, you want to tell us that, yes, but the board didn't understand how to do it. But I'm having trouble with linking those two ideas together because the board took the evidence that was then before it. Now, it may very well be that he could have appealed, Mr. Knight could have appealed the board's decision in some way back in 76. Well, that was pre-VJRA, Your Honor. Yes. But we're stuck with a record in which there is a fact-finding that his fainting spells, no matter how you look at them, and the board did look at them, don't relate to his later diagnosis. Your Honor, I believe... I'm having trouble getting over that particular big fact. Your Honor, if the board then had been armed with the interpretation of this regulation that we believe is correct and which we're urging on this court, they wouldn't have been nearly as casual and dismissive of those fainting spells as they were when they first examined the record back in 1976. How do we know that? They started, in the board's opinion, with the proposition that they were looking really for a diagnosis in service on active duty or symptoms during the presumptive period. And that's where they made the mistake, and that's where the clearly mistakeable error has occurred. All right. Let's hear from the Secretary, and we'll keep you rebuttal time, Mr. Fox. Mr. Codola. May it please the Court. The question before the Court is whether the interpretation of 3303 and 3307, which only applied the presumption that's found in 3307 to the one-year period after service as opposed to the within-service period, which is the interpretation Mr. Knight requests, was correct. Their interpretation was correct, and the plain language of the regulation compels that result. 3307A.2 defines separation from service. 3307A.3 states that the disease must have become manifest of a degree 10 percent or more within one year after the date of separation from service. By the plain language of 3307, that presumption, which is an exception, a liberalization of the default rule, which is in 3303 for symptoms that occur within service, only applies to the period after service. There's no contention that there were symptoms within the one year after service. Moreover, 3307 has a higher evidentiary requirement than 3303. It requires a 10 percent manifestation. 3303, the regulation for the within-service period, by contrast, in 3303B states that a disease is chronic. There must be a combination of manifestations sufficient to identify the disease entity within service. It doesn't have a 10 percent requirement, which is in 3307. That's a part of the statutory scheme. 3307 is granting a presumption, exempts this required finding of a nexus between the disease and service, which would otherwise be required. In exchange for that, there's a higher evidentiary burden. Moreover, 3303 has its own procedure, apart from the presumptions, for diagnosing whether all the evidence, including that pertinent to service, establishes that the disease was incurred in service. That's in 3303D. That's the procedure that's followed for a post-service initial diagnosis of disease. That's the situation we have here, in essence. Mr. Knight presented all of his medical evidence to the Board in 1976. The Board considered whether we should have a post-service initial diagnosis of disease. The Board also considered whether the one-year presumption in 3307 should apply, and the Board concluded that neither should apply. In the 2006 Clear and Unmistakable Error Action, the Board again, and the Veterans Court, concluded that the presumption should not apply in this case, and that interpretation was proper based upon the plain language of the regulations. But that also presumes that there was no manifestation during service. Here we have the fainting spells, which were, at the time, not connected with diabetes, but nonetheless, which clearly occurred. Isn't the argument, then, because the regulations do permit, when the manifestations are outside of the presumptive period, to look at the entirety of the record? If you go back, it wasn't as if the diabetes appeared without anything that might even colorably have been described as a symptom during service. The Board said, well, there's no connection. Council thinks that was casual in view of the clear diagnosis, not during the one-year period, but not long thereafter, accompanied by the fainting spells. There are two separate questions at issue. That's my question. Are there really two separate questions when you put everything together? We believe that they are separate questions. The first is whether the presumption, which is a liberalization of the normal rule under 3303, should apply. The Board concluded that the presumption should not apply because the symptoms did not occur within the one year after service. You're talking about the presumption under 307? That presumption, yes, Your Honor. That presumption. The second question is whether the Board properly weighed the evidence in determining that neither 3307 nor 303 would support a finding of diabetes within service based upon the fainting spells that occurred within service. What would be the consequences of applying the presumption, the 307 presumption, to the 303 determination in this case? The Board looked at the 307 presumption back in 76 and concluded that it didn't entail a finding of diabetes within service at that time. If there were an application of the presumption, the presumption, since it only applies to the one year after service, wouldn't change the outcome as far as we're aware. The Board considered the medical evidence on pages 53 and 54 of the appendix. The Board noted the principal argument on the veteran's behalf is that advanced by Dr. Connell, the physician discussed, in which he attributes the fainting spells in service as a manifestation of diabetes. However, the Board notes that during service no diagnosis of diabetes myelitis was made and there were no findings indicative of this disease. The urinalysis on entrance and the two in 1957 were negative for sugar and in the absence of clinical findings, the fainting spells cannot be arbitrarily attributed to diabetes. Even if the Court were somehow to conclude that the presumption within 3307 should somehow apply to the analysis of the medical evidence weighed by the Board back in 1976, I guess the proper remedy would be a remand for consideration in light of that regulation, but we're certainly aware of no basis to conclude that would be outcome determinative. Well, the presumption is a presumption. Let me understand this. I easily get confused in these things. Do I understand that the presumption is a presumption of service connection of a later diagnosed disease, but it's not a presumption that a particular set of symptoms, symptomology, means that disease existed. Do I have that right? I believe that's correct. The presumption in 3307 deals with something called nexus between a disease and service connection, but not necessarily whether the disease existed at a particular time. Other than any particular set of symptoms indicate that particular disease. We believe that the diagnosis, it doesn't change what the medical diagnosis ought to be. It's simply when there is a diagnosis of the 10% manifestation within the applicable period, that disease, which you now have to this level, is connected to your service. That appears to be how the presumption in 307 works, but it would not compel a finding that a fainting spell, which otherwise, according to the weighing of the medical evidence by the board, was, well, something that, I guess I'm not a doctor, but assuming for the sake of argument, is something that could be consistent with diabetes in certain circumstances, that does not compel a finding that any symptom that's consistent with the disease automatically becomes a diagnosis of that disease. Yeah, that's the point I'm struggling with. That is to say, let's assume the presumption applied to this case. The presumption, it seems to me, says that if the fainting spells that he had during his service are correctly diagnosed later on as having indicated diabetes, the presumption, it seems to me, says it's therefore service-connected. But the presumption doesn't necessarily say that if the board says no, no, that's not what those fainting spells mean. Does the presumption, if we apply it, mean the board is wrong, or is there still a question that has to be decided by the agency before you have a compensable injury? We think the board would still have to weigh the medical evidence, whatever presumption is applied, because the presumption would apply to whether diagnosis was service-connected as opposed to whether symptoms equated to disease. All right. Another factor here is that the regulations that were in effect at the time, largely the same now, already provide for a mechanism to have examination of whether the symptoms that may be consistent with a chronic disease that occurred within service but are only diagnosed after service should be considered to have been incurred in service. That's in Section 3303D. That has the post-service initial diagnosis of disease. If Mr. Knightson's proposed interpretation is correct, that the presumption should also apply within service, even though you have a presumption which is defined for the one year after service, Section 3303D would be superfluous because there would be no reason to have an examination of all the evidence, including that pertinent to service, establishes that the disease was incurred in service, which is the standard in 3303D, if you also have a presumption applicable, that from 3307, which would also apply to the in-service period. The scheme sets up two different standards based upon symptoms that occurred at two different times. It would be inconsistent with the statutory scheme to have a presumption which is defined by its terms to apply after service also to apply within service. Picking up on Judge Shull's question earlier to Mr. Fox, what is your answer to the symptomatology shown in the prescribed period argument that appears in subsection of 307? The symptomatology shown in the prescribed period may have no particular significance when first observed. The language shown in the prescribed period, the prescribed period is the one year after separation from service. That section would mean if you have symptoms that would be consistent with a 10% manifestation of chronic disease within that prescribed period, only later there's a definitive diagnosis, aha, that was 10% all along. The presumption could apply if that was the case. That is not to say that symptomatology prior to the prescribed period also would be entitled to the presumption. That would be our answer to that question. Okay. Any more questions? Ms. Koran for the questions. Any more questions? Okay. Thank you, Mr. Toter. Mr. Fox, you reserve two minutes. I would like to call to the attention of the Court the crucial line in the 1976 Board decision that essentially captures just about everything we have been talking about. It appears in the Joint Appendix at A53 and carries on to A54. It's under the section in that decision, Recall, Your Honors, we are challenging, by way of clear and unmistakable error, the 1976 Board decision. What they say, what the Board said in 1976 is very simple. However, the Board notes that during service, no diagnosis of diabetes mellitus was made. That's the starting point. And this is the point that I advanced in my principal argument to the effect that that's where they got stuck. They were focusing on diagnosis of diabetes while on active duty, and clearly we do not have that. They then go on to say there were no findings indicative of this disease, presumably, again, while on active duty. That's not what the regulation says, and that's not what the regulation said back in 1976. The regulation talks about symptomatology, not findings. Findings equate, Your Honors, with the concept of final, permanent diagnosis. Just one question. At A4, this is attached here, you say this is where we have the decision of the Veterans Court, and the first sentence says at the top, Appellant asserts that the 1976 Board decision misinterpreted Section 3.307C by requiring an in-service diagnosis of diabetes in order to grant presumptive service connection. Is that a correct characterization of your argument? Yes, as far as it goes, Judge Schall. We keep coming back to that line in the 1976 Board decision that I just quoted. At 53 and 54. 53 and 54. Last line on 53 incurring over 54, where the Board said we can't give Mr. Knight service connection for diabetes because it was not diagnosed on active duty, nor were findings made on active duty. That's not what the rule says now. That's not what the rule said then. The rule then and now talks about symptomatology, which we have. Okay. Thank you, Mr. Fox. Mr. Turner, the case is taken under submission. The Honorable Court has adjourned until tomorrow morning at 10 a.m.   Well, I'm going to work. Thank you. Thank you. Thank you. Thank you.